IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

V.                                                          CRIM. NO. 05-123-1

ISAISA SANCHEZ

MEMORANDUM OPINION

RUFE, J.                                                    JULY 27, 2006

  Defendant Isaisa Sanchez ("Sanchez") was sentenced to a term of imprisonment of 300 months followed by five years of supervised release. Sanchez pled guilty to one count of conspiracy to distribute over one kilogram of heroin in violation of 18 U.S.C. section 846.[1] Sanchez has filed a counseled appeal in which he claims that he should have received a lesser sentence. The Court herein sets forth the rationale buttressing the discretionary sentence imposed in this case. The Court

---

1. The Superseding Indictment was brought against 18 defendants: Sixteen entered guilty pleas, one remains a fugitive, and one is now deceased.

submits that its sentence, imposed in accordance with the sentencing statute, is reasonable.

The charges against Sanchez are based on his involvement in the operation of a large-scale, long-standing heroin ring with its hub of criminal activity in the City of Allentown, Pennsylvania. Specifically, Sanchez was the founding member and co-leader of the heroin ring. Sanchez recruited relatives and others to work for him, procured the drugs, and supervised the daily operation of the drug ring. During the thirty-eight months Sanchez ran the drug ring, the organization distributed approximately one kilogram of heroin per month in Allentown, which totals approximately 20,000 ten-dollar bags of heroin distributed per month.

Under the federal sentencing statutes, Sanchez faced a minimum term of imprisonment of ten years.[2] It is undisputed that Sanchez's total offense level under the Sentencing Guidelines is thirty-nine and that he has a Category IV Criminal History.[3] Based on a total offense level of thirty-nine and a Category IV Criminal History, the Guideline range for imprisonment on the conspiracy count is 360 months to life imprisonment.[4]

---

2.   21 U.S.C. §§  846, 841(a)(1), 841(b)(1)(A).

3.   See U.S. Sentencing Guidelines Manual ch. 5, pt. A

4.   See id.

However, <u>United States v. Booker</u>[5] requires the Court to tailor the sentence in light of other statutory concerns, particularly those set forth at 18 U.S.C. section 3553(a).[6] That section provides, in pertinent part:

> **(a) Factors to be considered in imposing a sentence.**–The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>
>> (1) the nature and circumstances of the offense and the history and characteristics of the offense and the history and characteristics of the defendant;
>>
>> (2) the need for the sentence imposed–
>>
>>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense;
>>>
>>> **(B)** to afford adequate deterrence to criminal conduct;
>>>
>>> **(C)** to protect the public from further crimes of the defendant; and
>>>
>>> **(D)** to provide the defendant with needed educational or vocational training, medical

---

5.   543 U.S. 220 (2005).

6.   <u>Id.</u> at 264.

> care, or other correctional treatment in the most effective manner...[7]

In sentencing the sixteen defendants in this indictment, the Court went to great lengths to avoid unwarranted sentencing disparities among the defendants[8] and to ensure that each defendant received a sentence that reflected his role in the conspiracy, his criminal history, his level of cooperation with the government's investigation, his acceptance of responsibility for criminal conduct and his prospects for rehabilitation. Of course, the Court was cognizant of the mandatory statutory requirements and the advisory Sentencing Guidelines.

Sanchez received the longest sentence of any of the sixteen defendants because he was the founder and co-leader of the large heroin ring that poisoned the residential streets of Allentown for over three years with approximately one kilogram of heroin per month. As the founder of the drug ring, it was Sanchez who created the business plan used by the organization to distribute heroin. Furthermore, Sanchez profited financially more than any of his co-defendants. Indeed, the members of the drug ring referred to Sanchez as "Mayimbe," a Native American tribal term meaning "chief".[9]

---

7. 18 U.S.C.§ 3553(a).

8. See 19 U.S.C. § 3553(a)(6).

9. Tr. of Sentencing at 40.

Sanchez and co-defendant Edgardo Colon ("Colon") hand-picked managers who oversaw runners who, in turn, provided heroin and cellular telephones to make contact with heroin customers. The runners collected the drug proceeds and provided them to the managers who then forwarded the proceeds to the organizational leadership, initially both Sanchez and Colon and, starting in September 2004, to Sanchez alone. A total of fourteen firearms were recovered which the members of the ring used to protect their interests throughout the conspiracy.

Upon indictment in this case, Sanchez remained a fugitive for five months until his apprehension on August 12, 2005. Sanchez was arrested in a Philadelphia hotel where he was staying under an assumed name. At the time of his arrest, he was in possession of $9000 in cash and a false identification card from Florida. Because Sanchez was a fugitive for five months, he was the last of the defendants to be arrested and essentially lost any opportunity to provide meaningful assistance to the Government. Indeed, the Government discontinued negotiations to obtain Sanchez's cooperation after he refused to take a lie detector test.

Even at the sentencing hearing, the Court found Sanchez to be less than forthcoming with the Court. At that hearing, Sanchez stated for the first time that it was he and his brother, Dedmas, who founded the drug ring.[10] In contrast, an agent

---

10.   Tr. of Sentencing at 27.

with the Federal Bureau of Investigation testified at sentencing that, at four different proffers, Sanchez stated that it was he and co-defendant Colon who started the ring and that Dedmas joined the conspiracy at a later time.[11] Although Sanchez stated that he had lied at the time of his proffers, as well as at his guilty plea proceeding before this Court, the Court was concerned that Sanchez was more recently trying to align himself with Dedmas because Dedmas received a 120-month sentence.[12]

The sentence imposed intends to protect the community and to promote respect for the law. Sanchez has pleaded guilty to retail theft, disorderly conduct, and some minor drug offenses. He also has violated his probation three times. He had no legitimate work experience from 2001 to 2005 and has indicated that his sole source of income was drug distribution. The 300 month sentence provides Sanchez the opportunity to access needed treatment, educational and/or vocational training needed to achieve his rehabilitation and return to the community as a productive law-abiding citizen.

---

11. *Id.* at 56-57.

12. Unlike Isaisa, Dedmas was not the founder and leader of the drug ring. Dedmas joined the ring several months after it was founded by Isaisa and was a member for twenty-three months. Further, unlike Isaisa, Dedmas was not a fugitive and was one of the first three defendants to cooperate with the Government.

Further, Sanchez's statutory mandatory minimum sentence was ten years, far less than the statutory mandatory minimum sentence of several of the organization's low-level street dealers.  The advisory Sentencing Guidelines range was 360 months to life. The sentence of 300 months strikes a balance between the range of the sentences given the other participants in the drug ring and the goals of 18 U.S.C. section 3553(a) of protecting the public, promoting respect for the law, deterring others who may be considering entering the lucrative business of drug dealing, recognizing the seriousness of the offenses and imposing just punishment.[13]

---

13.  Specifically, the Court stated:
> We need to deter others. We need to deter people in your family that willingly joined you in this organization at your request, and that is what I believe. We need to deter others in the community who think they can make a quicker buck and a bigger buck that way than working in a factory making the money the slow way, but the legal way.
> We need to deter children and young adults who may wish to follow in the footsteps of someone they think has gained some notoriety. That may be okay on television and in the movies, but it is not here in the criminal justice system, and I hope it is not in the City of Allentown.
> The organization that you founded, regardless of who you founded it with, was responsible for over 39 kilograms total. Not all of that is attributed to you. But, you agreed that you were less than that amount, but over 10 kilograms. That was for sentencing guideline computation.
> And that is significant alone when you consider how that kilogram a month is broken down into bundles and then broken down into individual packets sold to individuals, real people with real drug problems who, when they can't get their fix because they don't have money or can't get to their supply, commit all kinds of felony offenses and violent offenses.
> Your attorney said that you weren't violent, you didn't really have the guns in your personal possession. But I don't know what could produce more violence than serious drug abuse. And, in a conspiracy like this where there is a hierarchy that has been represented on that I know you saw, that I've seen more than one
>                                                           (continued...)

In addition, since Sanchez's version of events was less than candid and demonstrated a lack of remorse, a substantial period of incarceration was necessary for rehabilitation efforts to commence.

Respectfully submitted,

/s/ Cynthia M. Rufe, J.

_____

Cynthia M. Rufe, J.

---

13. (...continued)
time, that hierarchy promotes the violence downward. Even so, it snuck up on you. So, we know that this is a criminal enterprise that has violence attached to all parts of it...
    The least is, set by Congress, 10 years mandatory minimum. That doesn't seem sufficient considering that, on the low end of the totem pole there in your criminal enterprise, street dealers are facing 20 years mandatory minimum because they're junkies. That's not fair. You're the one that made all the money...
    What is important is that you're still at the top. And, for you to get anything less than anyone else would be a crime in itself, would not uphold the sentencing statute and its goals. I'm not worried about the mandatory minimum being met here. It's more than adequately met by the sentence I am going to impose...

Tr. of Sentencing at 75-78.